UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 05-61411-CIV-MARRA/SELTZER

NAUTILUS INSURANCE
COMPANY,

     Plaintiff,

vs.

S & S INDUSTRIAL SERVICES, INC.,
and FRANK HAZELWOOD.

     Defendants.
_____/

**ORDER AND OPINION**

This Cause is before the Court upon Plaintiff's Motion for Summary Judgment, filed August 14, 2006. (DE 27.) On November 8, 2006, Defendant Frank Hazelwood filed a response and cross motion for summary judgment. (DE 42.) Plaintiff filed an amended reply on December 26, 2006 (DE 48), and Defendant replied on January 5, 2007 (DE 49). The Court has considered the motions and the pertinent portions of the record, and is otherwise advised in the premises. The matters are now ripe for review.

**I.    Background**

This case was brought by Nautilus Insurance Company ("Nautilus") as a declaratory judgment action against Defendants S &S Industrial Services Inc. ("S&S") and Frank Hazelwood to determine whether coverage exists for injuries suffered by Mr. Hazelwood under an insurance policy issued by Nautilus to S&S. Plaintiff and Defendant Hazelwood have agreed that the case

should be decided on the cross motions for summary judgment.[1]  They have stipulated to the following set of facts:[2]

Nautilus Insurance Company issued a Commercial General Liability ("CGL") Policy of insurance to S&S.  (Stip. Statement of Facts ¶ 19.)  S&S is in the business of repairing industrial trash compactors and trash containers. (*Id.* ¶ 4.)  While most repairs were done onsite, occasionally S&S Industrial Services was required to bring a trash compactor or container back to its shop for repairs.  (*Id.* ¶ 5.)  S&S Industrial Services owned a flat bed truck and used that truck to transport trash compactors and containers to and from its shop.  (*Id.* ¶ 6.)

Frank H . Hazelwood worked at times for S&S from early November 2004 until December 10, 2004.  (*Id.* ¶ 1.)  Frank H. Hazelwood was paid $10.00 an hour by S&S Industrial Services for hours worked.  (*Id.* ¶ 2.)  Jeff Simpson, an employee of S&S Industrial Services, directed Frank H . Hazelwood's work activities.  (*Id.* ¶ 3.)

One of Mr. Hazelwood's work activities involved loading and unloading trash compactors and containers onto and off of the flat bed truck owned by S&S.  (*Id.* ¶ 7.)  The flat bed truck owned by S&S Industrial Services has a permanently attached pump operated hydraulic winch and cable which is used in loading the truck.  (*Id.* ¶ 8.)  The bed of the flat bed truck

---

[1] S&S has not made an appearance in the case.  However, the Court denied (DE 28) Plaintiff's previous motion for default against S&S because an entry of default only admits factual allegations, and not a conclusion of law.  At the time, the Court did not believe the record was sufficiently developed for it to draw legal conclusions from the allegations of the complaint.  Now, as there are no material facts in dispute and only a conclusion of law to be reached by the Court, the entry of a judgment would be proper.

[2] Nautilus filed a request for judicial notice of Mr. Hazelwood's deposition in the underlying state case.  Nautilus also attached the deposition of S&S's president to its reply.  The Court declines to consider these depositions as they are unnecessary for the Court to rule on the motions for summary judgment.

owned by S&S was powered by a hydraulic system which in turn is powered by a pump. (*Id.* ¶ 8a.)

On the day he was injured, Mr. Hazelwood was helping Jeff Simpson unload a trash container from the flat bed truck. (*Id.* ¶ 9.) To unload the container Jeff Simpson tilted the front end of the truck's bed upward to allow the container to roll off the back of the bed. (*Id.* ¶ 10.) The trash container got stuck and did not roll off. (*Id.* ¶ 11.) Jeff Simpson decided to use the truck's winch to free the stuck container. (*Id.* ¶ 12.) Jeff Simpson directed Mr. Hazelwood to go up onto the elevated front end of the truck's bed and retrieve the cable as it was unspooled from the truck's winch. (*Id.* ¶ 13.)

In order to retrieve the cable, Mr. Hazelwood positioned himself in front of the container on the elevated front end of the truck's bed. (*Id.* ¶ 14.) The cable never unspooled from the winch. Instead of unspooling the cable from the winch, Jeff Simpson moved the truck bed in a manner which caused the elevated front end of the bed to bounce and drop. (*Id.* ¶ 16.)

Mr. Hazelwood felt the elevated front end of the truck's bed bounce, drop and then he saw the container rolling forward towards him. (*Id.* ¶ 17.) Mr. Hazelwood, unable to get out of the container's way as it rolled towards the now lowered front end of the truck, was injured when the container rolled into him. (*Id.* ¶ 18.)

The only legal issue before the Court is whether the CGL policy issued by Nautilus to S&S provides coverage for Frank Hazelwood's injuries. The CGL policy contains an exclusion which excludes coverage for bodily injury suffered by employees while acting on behalf of S&S. The exclusion is in the form of an Amendatory Endorsement to the CGL policy. The Amendatory Endorsement replaces the Employee Exclusion found in the body of the policy. It

states in relevant part:

**AMENDATORY ENDORSEMENT- EMPLOYEE EXCLUSION**

Exclusion **e. Employer's Liability** of Paragraph **2. Exclusions** under **SECTION I - COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY** is replaced by the following:

    E. Employer's Liability

      "Bodily injury" to:

       (1) An "employee" of the insured arising out of and in the course of:

         (a) Employment by the insured; or

         (b) Performing duties related to the conduct of the insured's business; or

         ..........

    This Exclusion applies:

        (1) Whether the insured may be liable as an employer or in any other capacity; and

        (2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

    As respects this endorsement only, the definition of "Employee" in DEFINITIONS is **replaced** by the following:

    "**Employee**" shall include, but is not limited to, any person or persons hired by, loaned to, leased to, contracted for, or volunteering services to the insured, whether or not paid by the insured.

The original Employee Exclusion was identical to the Amendatory Endorsement that replaced it, with one exception: employee was not defined in the original Employee Exclusion. Rather, under the former exclusion, the reader would have to look to the "Definitions" section where "employee" is defined as:

> 5. "Employee" includes a "leased worker."  Employee does not include a "temporary worker."

The "Definitions" section then provides a definition for "Leased worker," which reads, in part, "Leased worker does not include a temporary worker."  "Temporary worker" is then defined in the Definitions Section along with "Volunteer worker" as follows:

> 19. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.
>
> 20. "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary, or other compensation by you or anyone else for their work performed for you."

Nautilus contends that coverage does not exist for Mr. Hazelwood's injuries because of the Employee Exclusion provision created by the Amendatory Endorsement.  Nautilus argues that Mr. Hazelwood's actions fit squarely into this Employee Exclusion.  Nautilus asserts that Mr. Hazelwood was performing duties for S&S, namely, unloading a trash container, when he was injured.  Nautilus further asserts that Mr. Hazelwood qualifies as an "employee" as defined in the Employee Exclusion provision.  Essentially, Nautilus argues that the definition of employee in the Employee Exclusion includes anyone doing anything in furtherance of S&S's business, regardless of whether they are doing so on a part time, full time, seasonal, temporary, or voluntary basis.  As a result, Plaintiff contends there is no coverage provided by the policy.[3]

Mr. Hazelwood does not dispute that he was performing services related to S&S's business, nor does he dispute that the exclusion of coverage for  "employees" who are injured on

---

[3] Plaintiff also argues that coverage is precluded by two other exclusions found in the CGL policy. As the Court finds the Employee Exclusion to be dispositive, the Court need not address Plaintiff's remaining arguments.

5

the job is valid and enforceable under Florida law. Mr. Hazelwood recognizes that the CGL policy does in fact contain an exclusion which eliminates coverage for bodily injury suffered by employees while acting on behalf of S&S. Defendant readily admits that "at first glance" the "employee" definition seemingly includes the activity of Mr. Hazelwood.

Despite these admissions, Defendant argues that the Amendatory Endorsement's definition of "employee" renders the CGL policy ambiguous and consequently provides coverage for Mr. Hazelwood. For support, Defendant asserts that under the former Employee Exclusion, temporary workers were not excluded from coverage. Because the new Employee Exclusion created by the Amendatory Endorsement makes no mention of temporary workers in its definition of "employee", but does include a reference to volunteers, Defendant contends that the policy creates an ambiguity as to whether temporary workers are excluded. To alleviate this ostensible ambiguity, Defendant argues that Nautilus should have included a reference to "temporary worker" in its new "employee" definition and deleted the definition of "temporary worker" in the policy's Definition section. Since Plaintiff failed to do this, Defendant asserts an ambiguity exists and coverage is required.

Nautilus replies that the new definition of "employee" specifically applicable to the Amendatory Endorsement is broad enough to include all types of workers, including temporary workers. Nautilus argues that the Employee Exclusion's definition of "employees" is clear and unambiguous. In response to Defendant's argument that the temporary worker definition should have been deleted, Plaintiff asserts that: 1) a definition standing alone cannot create coverage; and 2) it was necessary to retain the temporary worker definition because other parts of the CGL policy use the term "employee"with a definition that differs from the one in used in the

6

Amendatory Endorsement.

## II. Legal Standard

Summary judgment "shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial responsibility of showing the Court, by reference to the record, that there are no genuine issues of material fact that should be decided at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). When the non-moving party bears the burden of proof on an issue, the moving party may discharge its burden by showing that the materials on file demonstrate that the party bearing the burden of proof at trial will not be able to meet its burden. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).

When a moving party has discharged its burden, the nonmoving party must "go beyond the pleadings," and, by its own affidavits or by "depositions, answers to interrogatories, and admissions on file," designate specific facts showing there is a genuine issue for trial. *Celotex*, 477 U.S. at 324. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electronic Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). A mere "scintilla" of evidence supporting the opposing party's position will not suffice; there must be a sufficient showing that the jury could reasonably find for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *see also Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990).

When deciding whether summary judgment is appropriate, the Court must view the

evidence and all reasonable factual inferences therefrom in the light most favorable to the party opposing the motion. *Witter v. Delta Air Lines, Inc.,* 138 F.3d 1366, 1369 (11th Cir. 1998) (citations and quotations omitted). The Court must "avoid weighing conflicting evidence or making credibility determinations." *Hilburn v. Murata Electronics N. Am., Inc.*, 181 F.3d 1220, 1225 (11th Cir. 1999). Rather, the determination is whether there are any genuine issues of fact which should properly be resolved by the fact finder because they can be resolved in favor of either party. *Anderson*, 477 U.S. at 250.

### III.     Discussion

This is an action for a declaratory judgment brought pursuant to diversity jurisdiction. A court which sits in diversity jurisdiction must apply both the substantive law and the choice of law rules of the forum state. *LaFarge Corp. v. Travelers Indem. Co.,* 118 F.3d 1511, 1515 (11th Cir.1997); *Bituminous Cas. Corp. v. Advanced Adhesive Tech., Inc.,* 73 F.3d 335, 337 (11th Cir.1996). Here, the insurance contract was issued in Florida to a Florida company and the parties do not dispute that Florida law controls. Therefore, the interpretation of the policy is governed by Florida law.

"An insurance policy must be read in its entirety for a determination of coverage." *Prudential Property and Cas. Ins. Co. v. Bonnema*, 601 So.2d 269, 271 (Fla Dist. Ct. .App. 1992). Both Florida Courts and the Florida Legislature have made this clear. Section 627.419(1), Florida Statutes (Supp.1990), provides, "Every insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy and as amplified, extended, or modified by any application therefor or any rider or endorsement thereto." *Haenal v. United States Fidelity & Guaranty Co. of Baltimore, Md.,* 88 So.2d 888 (Fla.1956).

Florida law provides that insuring or coverage clauses are construed in the broadest possible manner to effect the greatest extent of coverage. *Union American Ins. Co. v. Maynard*, 752 So.2d 1266, 1268 (Fla. Dist. Ct. App. 2000); *Westmoreland v. Lumbermens Mut. Cas. Co.,* 704 So.2d 176, 179 (Fla. Dist. Ct. App. 1997), *rev. dismissed,* 717 So.2d 534 (Fla. 1998). If the language in an insurance policy is subject to differing interpretations, the policy language should be construed liberally in favor of the insured and strictly against the insurer. *State Farm Fire & Cas. Co. v. CTC Dev. Corp.,* 720 So.2d 1072, 1076 (Fla. 1998); *Premier Ins. Co. v. Adams,* 632 So.2d 1054, 1055 (Fla. Dist. Ct. App. 1994). Exclusionary clauses in liability insurance policies are to be construed liberally in favor of the insured and strictly against the insurer. *Maynard,* 752 So.2d at 1268; *Deni Assocs. of Florida, Inc. v. State Farm Fire & Cas. Ins. Co.,* 711 So.2d 1135, 1138 (Fla. 1998); *Premier,* 632 So.2d at 1055. To properly interpret an exclusion, the exclusion must be read in conjunction with the other provisions of the policy, from the perspective of an ordinary person. *See CTC Dev. Corp.,* 720 So.2d at 1074-75; *Mactown, Inc. v. Continental Ins. Co.,* 716 So.2d 289, 291 (Fla. Dist. Ct. App. 1998).

The insurer must make it precisely clear what is excluded from coverage. *Westmoreland*, 704 So.2d at 179. If the insurer fails to do this and the exclusion could be read as both providing and excluding coverage, then the exclusionary clause must be construed in favor of coverage. *Id.* "If the insurer makes clear that it has excluded a particular coverage, however, the court is obliged to enforce the contract as written." *Id.*

An Amendatory Endorsement *replaces* the former provision in the policy. Because it replaces the former provision, it cannot be read in conjunction with the former provision. It can only be read in conjunction with the other provisions of the policy then in effect. Insurance

companies utilize Amendatory Endorsements for various reasons, one of which is to keep intact their master policies from state to state but maintain the ability to change certain provisions depending on the different state court systems and judicial interpretations. *Prudential Property and Cas. Ins. Co. v. Bonnema,* 601 So.2d 269, 270 (Fla. Dist. Ct. App. 1992).

Here, the Amendatory Endorsement completely replaced the former Employee Exclusion with a new and different one. The Employee Exclusion in effect on the date of the injury is clear and unambiguous. The definition in the Amendatory Endorsement makes clear that "employee" includes "any person or persons hired by, loaned to, leased to, contracted for, or volunteering services to the insured, whether or not paid by the insured." This new definition encompasses a temporary worker because a temporary worker, as well as a permanent worker, can be hired, loaned to, leased to, contracted for, a volunteer, and can work for pay or for no pay. A specific reference to temporary worker was no more necessary than was the need for a specific reference to permanent worker, because the definition clearly applies to both. The fact that the term "temporary worker" is absent from the new definition does not render the "employee" definition ambiguous.

Furthermore, the Amendatory Endorsement is unequivocal in stating that this definition of "employee" is only applicable to this Employee Exclusion provision. The fact that the Amendatory Endorsement does not delete the definition of "temporary worker" in a different part of the policy is irrelevant. The "employees" and "temporary workers" definitions found in the Definitions section of the policy are still germane to other policy provisions because the term "employee" is used elsewhere. This does not create an ambiguity with respect to the Employee Exclusion included in the Amendatory Endorsement because the definition of "employee" in the

Employee Exclusion is limited to that provision; there is no need to look to the Definitions section when interpreting the new Employee Exclusion.

Contrary to Defendant's arguments, there is no ambiguity between the former employee exclusion and the one in effect on the date of the injury. The former provision has been replaced and no longer has any application or effect. An ambiguity can only be created between or among provisions of a policy that are in effect. An ambiguity cannot be created between a current provision of a policy and a former provision no longer in effect. The new and current Employee Exclusion is not susceptible to differing interpretations. It is clear that the insurer has excluded a particular coverage and this Court is obliged to enforce the contract as written. *Westmoreland*, 704 So.2d at 179.

Under the facts of this case, the unambiguous Employee Exclusion applies to Mr. Hazelwood and excludes coverage for the injuries he suffered. Frank Hazelwood was performing work for S&S at the time of his injury, namely helping Mr. Simpson unload a trash compactor for S&S. Thus, he was performing a duty related to the conduct of S&S's business.

With respect to his status as an employee, the parties stipulated that Mr. Hazelwood worked for S&S at times and was paid $10.00 an hour for that work. Regardless of whether Mr. Hazelwood was a paid worker, a volunteer, or a temporary worker[4] on the day he was injured, he clearly fits within the expansive definition of employee found in the Amendatory Endorsement. He was either a person hired by, loaned to, leased to, contracted for, or volunteering services to

---

[4] The parties dispute whether Mr. Hazelwood was being paid or volunteering for S&S on the day in question and also dispute whether he was a temporary worker. As the parties have stipulated and agreed to *what* he was doing, his conduct qualifies as an employee regardless if he was being paid, or volunteering, or working on a temporary basis.

the insured, whether or not paid by the insured. Thus, as a matter of a law, Mr. Hazelwood is excluded by the Employee Exclusion for the injuries he suffered while helping Mr. Simpson.

### IV.     Conclusion

Based on the foregoing, it is **ORDERED and ADJUDGED** that Plaintiff Motion for Summary Judgment  **(DE 27)** is **GRANTED;** there is no coverage under the CGL policy issued by Nautilus to S&S for the injuries suffered by Frank H. Hazelwood.  Plaintiff's Motion for Oral Argument on Motion for Summary Judgment (**DE 29)** is **DENIED**.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 27th day of March, 2007.

_____

KENNETH A. MARRA
United States District Judge

Copies to:
All counsel of record